UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO: 3:14-CV-749-JHM

CHURCH MUTUAL INSURANCE COMPANY,                        PLAINTIFF

V.

VON SMITH, and                                           DEFENDANTS
CLAUDE REYNOLDS INSURANCE AGENCY, INC.

### Memorandum Opinion and Order

This matter is before the Court on Defendant Claude Reynolds Insurance Agency's Motion for Partial Summary Judgment [DN 130]. Fully briefed, this matter is ripe for decision. For the following reasons, the Court holds that Defendant's Motion for Partial Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

### I. Background

Plaintiff Church Mutual Insurance Company brings this case against its former employee, Von Smith, and the company where he worked after leaving its employment, Claude Reynolds Insurance Agency. This Court previously summarized the facts of this case in deciding Defendant's Motion to Dismiss as follows:

Church Mutual Insurance Company ("Church Mutual") provides casualty and property insurance for churches and other religious institutions. Over many years, it has built a large electronic database that it claims contains a vast collection of proprietary information about its customers. This database includes contact information, details on existing policies, general underwriting policies, bids made to potential customers, and so on. It relies on "regional representatives" who service specific geographic areas. These regional representatives sell

policies, service existing customers, and help the company build goodwill. To that end, each regional representative receives access to the electronic database of proprietary information.

To protect this supposed proprietary information, Church Mutual utilizes password protection and data encryption. Additionally, regional representatives may access only the proprietary information pertinent to their assigned geographic areas. This prevents disgruntled or nefariously enterprising employees from leaving the company and accessing all of the company's data for the benefit of a competitor. Regional representatives must also sign non-disclosure agreements for the proprietary information, along with non-compete and non-solicitation agreements.

Von Smith was a regional representative. He served various counties in western Kentucky. When hired in 2008, he signed an employment contract ("the 2008 Contract") that included the non-disclosure, non-compete, and non-solicitation agreements. Originally, the non-compete and non-solicitation agreements extended for three years after his departure from Church Mutual. The contract's language also stipulated that he understood the electronic database was proprietary information, he knew he had no right to it, and he recognized the remedies Church Mutual would pursue if he violated the agreements. In December 2013, Smith signed a new contract ("the 2013 Contract") with Church Mutual. This time, the non-compete and non-solicitation agreements extended for only two years. In March 2014, his employment with Church Mutual ended.

Within mere days of the end of his Church Mutual tenure, Smith took employment with the Claude Reynolds Insurance Agency ("CRA"). CRA competes against Church Mutual. Three months after he left Church Mutual, Church Mutual began receiving tips that he was breaching his non-disclosure, non-compete, and non-solicitation agreements. At least three churches—

former clients of Church Mutual that Smith serviced when he was at the company—admitted that Smith reached out to them and helped lure them away from Church Mutual. Church Mutual even received word from a former customer that, while at CRA, Smith telephoned the customer and told it that its Church Mutual policy was about to expire and that it could save money by buying a policy from CRA instead of renewing with Church Mutual. Because of these tips, Church Mutual sent Smith a cease and desist letter in July 2014. The letter warned that Church Mutual would take legal action against Smith and CRA. Smith never responded. Church Mutual sent a second letter in August 2014, and this time it also sent a copy to CRA. In August and September 2014, Church Mutual learned of other former customers whom Smith had contacted while at CRA.

Church Mutual sued in November 2014. Towards the end of November 2014, the late Senior Judge John G. Heyburn II granted Church Mutual's motion for a temporary restraining order [DN 9]. In December 2014, CRA filed a motion to dismiss [DN 12], claiming that all claims against it should be dismissed pursuant to lack of subject matter jurisdiction and, in the alternative, failure to state a claim. This Court found that federal subject matter jurisdiction did exist and Church Mutual adequately stated a claim for all but one count of the Complaint. (Mem. and Opinion [DN 32].) Count X, asserting a claim of permanent injunction, was dismissed since injunctions are remedies rather than causes of action. However, because injunctive relief is still a requested remedy within the Complaint, this Court described CRA's motion to dismiss victory as "pyrrhic."

Then in November 2015, two additional parties joined this lawsuit. Brotherhood Mutual Insurance Company and Selective Insurance Company of America each utilize CRA representatives to sell their insurance policies. Both parties intervened in this lawsuit pursuant to

Federal Rule of Civil Procedure 24 for the limited purpose of seeking a protective order for discovery requests propounded by Church Mutual. (Motions to Intervene [DN 37 & 41].) Magistrate Judge Lindsay entered a Protective Order [DN 81] on August 15, 2016.

On September 9, 2017, CRA filed this Motion for Partial Summary Judgment. CRA claims that it is entitled to judgment as a matter of law on all of the claims remaining against it.

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient;

there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

### III. DISCUSSION

There are four claims that remain against Defendant CRA. Count III alleges that CRA misappropriated trade secrets in violation of Kentucky's Uniform Trade Secrets Act. Count IV alleges tortious interference with a contractual relationship. Count VI is for tortious interference with business expectancy. Lastly, in Count VII, Church Mutual alleges that CRA was unjustly enriched. The Court will discuss each claim in turn.

**Trade Secret Misappropriation (Count III)**

The first claim for which CRA seeks summary judgment is Church Mutual's claim for trade secret misappropriation. Kentucky has adopted the Uniform Trade Secrets Act, Ky. Rev. Stat. § 365.880 et seq. Under this statute, a plaintiff is required to prove two elements to obtain relief: (1) that its information qualifies as a trade secret; and (2) defendant misappropriated that trade secret. Brake Parts, Inc. v. Lewis, 443 Fed. App'x. 27, 29 (6th Cir. 2011). Both of these requirements are at issue here. First, the parties disagree about whether the Church Mutual information used by Smith to poach customers for CRA qualifies as a trade secret. The second issue is, if the information did include trade secrets, whether that information was obtained through misappropriation.

On the issue of whether the proprietary information in this case qualifies as a trade secret, both parties argue that the Court should grant summary judgment in their favor. The determination of what is a trade secret is a question of fact. KCH Services, Inc. v. Vanaire, Inc., No. 05-777-C, 2008 WL 4401391, at *2 (W.D. Ky. Sept. 24, 2008). "To qualify as a trade secret, the information must derive independent economic value, not be readily ascertainable by proper

means, and be the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Auto Channel, Inc. v. Speedvision Network, LLC, 144 F. Supp. 2d 784, 794 (W.D. Ky. 2001) (citing Ky. Rev. Stat. § 365.880(4)) (quotation marks omitted). CRA does not dispute that the information used by Smith to pursue Church Mutual clients had economic value and was subjected to an effort to maintain secrecy. However, CRA argues that most of the Church Mutual information in question cannot be a trade secret because it was "readily ascertainable by proper means." (Mot. for Partial Summ. J. [DN 131] at 3.) In determining whether information can be considered a trade secret, Kentucky courts have used the following factors set forth in the Restatement of Torts § 757:

> (1) the extent to which the information is known outside the business; (2) the extent to which it is known by employees and other involved in the business; (3) the extent of measures taken to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

Aftermarket Tech. Corp. v. Whatever It Takes Transmissions, No. 3:00-CV-326-R, 2003 U.S. Dist. LEXIS 27933, at *88 (W.D. Ky. Aug. 13, 2003).

In this case, the information used by Smith in his attempts to get Church Mutual clients to switch to CRA included customer lists, contact information, policy expiration dates, and Church Mutual's future price increases. While some of this information may have been readily available, other information could be considered a trade secret by a jury. In particular, CRA's price increases would not have been known or accessible to those outside of Church Mutual. For this reason, the court will not grant summary judgment to CRA.

Church Mutual responds by claiming that the Court should instead find it entitled to summary judgment pursuant to Fed. R. Civ. P. 56(f). Church Mutual argues that the Court has

already classified the information in question to be a trade secret, referencing Judge Heyburn's findings from the Order Granting Plaintiff's Motion for Temporary Restraining Order [DN 9]. However, this Court is not bound by findings made when granting a temporary restraining order or preliminary injunction. <u>Univ. of Texas v. Camenisch</u>, 451 U.S. 390, 395 (1981). Judge Heyburn's findings were not intended to be conclusive. Instead, the findings simply explained his conclusion that Church Mutual was likely to succeed on the merits at trial. Thus, the Court declines to grant summary judgment to Church Mutual.

Further, the Court cannot grant summary judgment as there are genuine issues of material fact about whether these alleged trade secrets were obtained through improper means. The KUTSA defines misappropriation as "improper means" of obtaining trade secrets. <u>Auto Channel, Inc.</u>, 144 F. Sipp 2d at 793. Here, the parties do not agree on the form of the information Smith possessed and how he came to have that information after his employment at Church Mutual ended. CRA claims that Smith merely retained a mental list of customers he worked with while at Church Mutual. Any other information, CRA contends, was obtained through the internet or by requesting it from customers directly, a practice which CRA claims is a customary in the insurance trade. Church Mutual alleges that when Smith arrived at CRA, he did so not only with customer names but with contact information, policy expiration dates, and pricing information for Church Mutual policies. Because of this dispute of material fact, the Court declines to grant summary judgment on Count III.

**Tortious Interference with a Contractual Relationship (Count IV)**

A claim for tortious interference with a contract must assert six elements: (1) the existence of a contract; (2) defendant's knowledge of the contract; (3) defendant's intent to cause a breach of that contract; (4) that defendant's action in fact caused a breach of the contract; (5)

that plaintiff suffered damages as a result of the breach; and (6) that defendant enjoyed no privilege or justification for its conduct." Seegers Enterprises, Inc. v. Town & Country Bank & Trust Co., 518 S.W.3d 791, 795 (Ky. Ct. App. 2017); Ventas, Inc. v. Health Care Prop. Investors, Inc., 635 F. Supp. 2d 612, 618−19 (W.D. Ky. 2009). Additionally, in order to prevail, a plaintiff must generally show some malice or significant wrongful conduct. Seegers, 518 S.W.3d at 795. CRA claims it is entitled to summary judgment because Church Mutual does not offer evidence of the fourth element – that its actions caused Smith to breach the contract. Instead, CRA contends that Smith arrived at CRA without any instructions to target his former Church Mutual clients and that his decision to do so was made independently of CRA. Further, CRA claims that there is no evidence of malice or improper interference and therefore this claim cannot move forward.

Church Mutual argues that because causation is a question of fact, this issue should go to a jury to resolve. According to Church Mutual, the facts demonstrate that CRA caused Smith to breach his contract when it continued to employ him and allow him to sell to Church Mutual former clients even after CRA was made aware of Smith's noncompetition agreement. Church Mutual argues, and the Court agrees, that these facts preclude judgment as a matter of law in favor of CRA. Instead, a jury must decide whether these facts lead to the reasonable conclusion that CRA acted maliciously in causing Smith to breach his contract with Church Mutual. Summary judgment is denied on Count IV.

## Tortious Interference with Business Expectancy (Count VI)

To prevail on a claim of tortious interference with business expectancy, a plaintiff must show that: (1) the existence of a valid business relationship or its expectancy; (2) the defendant's knowledge thereof; (3) the defendant's intentional act of interference; (4) the defendant's

improper motive; (5) causation; and (6) special damages. Ventas, Inc., 635 F. Supp. 2d at 621. "Showing malice or some significantly wrongful conduct is evidence of improper conduct." Id. at 622. In seeking to dismiss this cause of action, CRA claims that Church Mutual cannot prove CRA's improper motive. The question of whether motivation was improper is one for jury determination. All Members of the Nat'l Collegiate Athletic Asso. v. Hornung, 754 S.W.2d 855, 858 (Ky. 1988). Kentucky courts use the following factors from the Restatement of Torts to determining whether conduct is improper:

> (a) the nature of the actor's conduct; (b) the actor's motive; (c) the interests of the other with which the actors conduct interferes; (d) the interests sought to be advanced by the actor; (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other; (f) the proximity or remoteness of the actor's conduct to the interferences; and (g) the relations between the parties.

Id; Restatement 2d of Torts § 767. Church Mutual alleges that CRA acted with improper motive by "allowing Smith to use confidential information gained through his employment with Church Mutual to cause eleven churches to economically benefit [CRA]." (Resp [DN 133] at 33.) Church Mutual contends that CRA did this hoping that Smith would add to their profitability. Viewing the facts in a light most favorable to Church Mutual, a reasonable jury could find that such behavior constituted improper motive within the factors set forth in Hornung. Therefore, summary judgment must be denied for Count VI.

**Unjust Enrichment (Count VIII)**

Lastly, CRA claims that it is entitled to judgment on Church Mutual's claim of unjust enrichment, arguing this claim is preempted by Church Mutual's claim under the KUTSA. The language of the KUTSA expressly preempts "conflicting tort, restitutionary, and other laws providing civil remedies for misappropriation of a trade secret." Ky. Rev. Stat. § 365.892(1). Other courts in this district have found that quasi-contractual claims of unjust enrichment are

governed by the KUTSA. Auto Channel, Inc., 144 F. Supp. 2d at 790. Further, the preemption powers of this statute apply "regardless of whether the plaintiffs demonstrate that the information at issue qualifies as a trade secret." Id. at 78. Therefore, to the extent that Church Mutual's unjust enrichment claim is based solely on the facts giving rise to the misappropriation of trade secrets claim, it is preempted by the KUTSA. FBK Partners, Inc. v. Thomas, No. 09-292-GFVT, 2010 WL 4940056, at *10 (E. D. Ky. Nov. 30, 2010).

In this case, Church Mutual's unjust enrichment claim is based on CRA acquiring and retaining the benefit of Church Mutual's proprietary information and book of business without paying for its value. (Compl. ¶¶ 104−08.) Likewise, Church Mutual's claim of misappropriation of trade secrets is based on CRA's acquisition and retention of its proprietary information and book of business for its own benefit. (Id. ¶¶ 65−76.) Finding that these claims are based on the same facts, Church Mutual's claim for unjust enrichment is preempted. Summary judgment on Count VIII is granted to CRA.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant Claude Reynolds Insurance Agency's Motion for Partial Summary Judgment is **DENIED** as to Counts III, IV, and VI and **GRANTED** as to Count VIII.

*Joseph H. McKinley*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

December 1, 2017

cc: counsel of record